```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JUNUS TOAR, individually and on behalf of                   :
all other persons similarly situated,                       :
                                                            :
                              Plaintiff,                    :        13-CV-1901 (VSB)
                                                            :
              -v-                                           :        MEMORANDUM & ORDER
                                                            :
SUSHI NOMADO OF MANHATTAN, INC.;                            :
LAI FONG CHAN; and WEI LOONG CHAN;                          :
jointly and severally,                                      :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/2017

Appearances:

Brandon D. Sherr
Justin A. Zeller, P.C.
New York, New York
*Counsel for Plaintiff*

Saul D. Zabell
Zabell & Associates, P.C.
Bohemia, New York
*Counsel for Defendant/s*

VERNON S. BRODERICK, United States District Judge:

      Currently pending before me is Plaintiff's letter motion, (Doc. 135), which argues that I must accept the parties' Rule 68 Offer of Judgment, (Doc. 126), and Notice of Acceptance of Offer of Judgment, (Doc. 128), in this case brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq. Because I find that the FLSA precludes the parties here from settling Plaintiff's FLSA claims without obtaining my approval or under the supervision of the Department of Labor ("DOL"), I instruct the Clerk of Court not to enter judgment on behalf of Defendants.

1

I.  **Background**

This case was initiated with the filing of a complaint on March 21, 2013.[1] (Doc. 1.) Defendants Wei Loong Chan ("Loong Chan") and Sushi Nomado of Manhattan, Inc. ("Nomado") filed their answer on May 21, 2013. (Doc. 8.) Plaintiff filed a letter motion seeking to amend his complaint on March 18, 2014, (Doc. 13), and I granted Plaintiff leave to amend the next day, (Doc. 14). On March 20, 2014, Plaintiff filed his first amended complaint, which still only named Defendants Loong Chan and Nomado. (Doc. 17.) Defendants Loong Chan and Nomado answered on April 10, 2014. (Doc. 18.)

On March 10, 2015, Defendants Loong Chan and Nomado filed their summary judgment papers. (Docs. 46-49.) Plaintiff filed his opposition papers and cross-motion for partial summary judgment on April 13, 2015, (Docs. 55-57), and Defendants Loong Chan and Nomado filed their reply papers on May 4, 2015, (Docs. 61-63). Plaintiff filed his reply memorandum of law on his cross-motion for partial summary judgment on May 14, 2015. (Doc. 68.)

While the parties' motions for summary judgment were pending, Plaintiff informed me during an April 1, 2015 conference that he wished to amend his complaint to add Defendant Lai Fong Chan ("Fong Chan"). (April 1, 2015 Conference Tr., Doc. 69, at 4-5.) Plaintiff filed his motion to amend papers on May 11, 2015, (Docs. 64-65), and Defendants Loong Chan and Nomado filed their opposition papers on May 28, (Docs. 72-73). Plaintiff filed his reply papers on June 9. (Docs. 74-75.) I held a conference in this matter on August 5, 2015, at which I granted Plaintiff leave to amend his complaint to add Defendant Fong Chan. (*See* Doc. 84.) At that conference, Plaintiff for the first time also asked to be allowed to fix a "typographical" error

---

[1] This case was initially assigned to District Judge George B. Daniels, who held an initial conference in this matter on July 21, 2013. (Dkt. Entry July 21, 2013.) The case was subsequently reassigned to me on February 5, 2014. (Dkt. Entry Feb. 5, 2014.)

in the complaint related to when the complaint alleged Plaintiff began working at Nomado. (*See* Doc. 88.) After receiving letters from both parties regarding Plaintiff's desire to correct this error, (Docs. 86, 87), I denied Plaintiff leave to correct the purported error in his amended complaint, (Doc. 88). I ordered that Plaintiff file his Second Amended Complaint on or before August 12, 2015. (*Id.*)

On August 12, 2015, Plaintiff filed his Second Amended Complaint. (Doc. 89.) Defendants Loong Chan and Nomado answered on August 27, 2015. (Doc. 90.) On December 23, 2015, I ordered the parties to provide me with a joint letter containing their views on whether and if so how the addition of Defendant Fong Chan impacted the pending motions for summary judgment. (Doc. 91.) The parties filed their letter on January 4, 2016. (Doc. 92.) Based on the parties' representations, I issued an order on January 5, 2016, directing that Defendant Fong Chan answer Plaintiff's Second Amended Complaint and, assuming Defendant Fong Chan did answer, that I would treat Defendant Fong Chan as having joined in Defendants' motion for summary judgment, and as having been added to Plaintiff's cross motion for partial summary judgement. (Doc. 94.) Defendant Fong Chan filed an answer on January 15, 2016. (Docs. 101, 102.)[2]

Plaintiff sent me a letter on January 4 in anticipation of filing a motion for Rule 11 sanctions concerning Defendants' repeated denial during the litigation that they had gross revenues less taxes in excess of a half-million dollars. (Doc. 93.)[3] In his letter, Plaintiff asserted that he had received documents from Defendant Nomado's accounting firm demonstrating that

---

[2] Apparently Defendants filed an answer on January 15, 2016 without including Defendant Fong Chan, (Doc. 101), but corrected the error by filing another answer on January 19, 2016, (Doc. 102).

[3] Whether Defendant Nomado was an enterprise engaged in commerce or the production of goods for commerce with gross revenues less taxes in excess of a half-million dollars is an element Plaintiff is required to prove in order to maintain his FLSA overtime claims. *See Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 300-02 (E.D.N.Y. 2009).

Defendant Nomado "earned double this minimum threshold throughout the plaintiff's employment." (*Id*. (emphasis omitted).) I held a conference regarding Plaintiff's concerns on January 13, 2016, at which Defendants agreed to admit that Defendant Nomado's gross revenues exceeded the statutory threshold for the years 2010, 2011, 2012, and 2013, and I filed an Order documenting that admission, among other things. (*See* Doc. 100.) Defendants also agreed to withdraw their motion for summary judgment on this issue. (*Id.*)

On January 19, 2016, Defendants filed their amended answer. (Doc. 102.) In a Memorandum & Order filed on March 31, 2016, I denied Defendants' motion for summary judgement and granted in part and denied in part Plaintiff's motion for partial summary judgment. (Doc. 101.)

On April 25, 2016, I set a trial date of July 20, 2016. (Doc. 106.) This trial date was not adjourned, although the parties sought and received numerous extensions on the filing of their pretrial submissions principally due to other professional obligations of counsel and settlement discussions. (*See* Docs. 107, 108, 109, 110, 111.) After the parties failed to file the joint pretrial submissions due under Rule 6 of my Individual Rules by June 30, 2016 as required by my endorsement of Plaintiff's letter requesting additional time due his illness, (Doc. 112), I issued an Order directing the joint submissions be filed no later than July 6, (Doc. 121). On July 1, 2016, Defendants' counsel filed various pretrial submissions on behalf of his clients. (Docs. 115-19.) In the cover letter that accompanied the pretrial documents, defense counsel apologized for the one day delay, indicated that because of the holiday weekend he was unable to coordinate the filing of a joint submission with Plaintiff's counsel, and explained that "parties came close to reaching an agreement in principle with respect to settlement, but were unable to finalize a deal." (Doc. 120.) I subsequently endorsed defense counsel's cover letter indicating that consistent

with my prior Order I expected the parties to file joint pretrial submissions by July 6. (Doc. 122.) On July 6, 2016, the parties represented to me in a letter that they had settled this matter. (Doc. 123.) Specifically, the parties asserted that they had "reached terms of settlement and request time to effectuate the settlement before dismissal." (*Id*.) Upon receipt of this correspondence, I ordered that the parties file materials by August 7, 2016, so that I could determine if the settlement was fair and reasonable. (Doc. 124.) On August 9, 2016, when the parties had failed to file the required submissions or to request additional time to make such a submission, I issued an Order directing that they file the submissions by August 11, 2016. (Doc. 125.) The parties subsequently filed a Rule 68 Offer of Judgment dated August 10, 2016, (Doc. 126), and Notice of Acceptance of Offer of Judgment dated August 11, 2016 ("Acceptance"), (Doc. 128).

## II. Legal Standard

### A. *The FLSA*

The FLSA was enacted "to correct and as rapidly as practicable to eliminate" certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. In this regard, the FLSA, establishes a minimum wage, *id.* § 206(a), requires the payment of overtime compensation, *id.* § 207, and provides for up to an "additional equal amount as liquidated damages," *id.* § 216(b), among other things. In enacting the FLSA, Congress sought to establish a "uniform national policy of guaranteeing compensation for all work" performed by covered employees. *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945). Therefore, the Supreme Court has held that "[a]ny custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements,

cannot be utilized to deprive employees of their statutory rights," *id.* (internal quotation marks omitted), and that it will apply "to those who would decline its protections" because "employers might be able to use superior bargaining power to coerce employees . . . to waive their protections under the Act." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). Consistent with these decisions, and because the FLSA is a "uniquely protective statute," the Second Circuit held that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207, 206 (2d Cir. 2015). "Requiring judicial or [Department of Labor] approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

### B. *Federal Rule of Civil Procedure 68*

Federal Rule of Civil Procedure 68 provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). Rule 68 offers are considered settlement offers. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667-68, 670-71 (2016) (characterizing a Rule 68 offer as a settlement offer). If the opposing party accepts the offer in writing within 14 days after being served, either party may file the offer and notice of acceptance, and "[t]he clerk must then enter judgment." Fed. R. Civ. P. 68(a). If the offeree rejects the offer and later obtains a judgment that is "not more favorable than the unaccepted offer," the offeree must pay the costs incurred after the offer was made. Fed. R. Civ.

P. 68(d). In other words, "a party that rejects a Rule 68 offer may be subject to the cost-shifting provision of Rule 68(d) if it does not obtain a more favorable judgment." *Steiner v. Lewmar*, 816 F.3d 26, 31 (2d Cir. 2016). "Rule 68 is a cost-shifting rule intended to encourage settlement and avoid protracted litigation." *Id.* (citing *Marek v. Chesny*, 473 U.S. 1, 5 (1985)); *see also* Wright & Miller, Federal Practice and Procedure § 3001 ("It is roundly agreed in the courts that Rule 68 was intended to encourage settlements and avoid protracted litigation . . . .").

### III. Discussion

Plaintiff argues that the requirement that FLSA settlements be judicially approved as fair and reasonable does not apply to FLSA cases resolved via Rule 68. The Second Circuit has not addressed the question of whether *Cheeks* applies to an acceptance of a Rule 68 offer of judgment. As Plaintiff points out, *Cheeks* was decided in the context of a Rule 41(a) dismissal. Unlike Federal Rule of Civil Procedure 41(a), the language of Federal Rule of Civil Procedure 68 provides no exception to its terms. *Compare* Fed. R. Civ. P. 41(a) ("Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared.") *with* Fed. R. Civ. P. 68(a) ("At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment."). The "applicable federal statute" exception to Rule 41(a) provided the basis for the Second Circuit's decision in *Cheeks*, but Rule 68 contains no comparable language. *See Baba v. Beverly Hills*

*Cemetery Corp. Inc.*, No. 15 Civ. 5151 (CM), 2016 WL 2903597, at *1 (S.D.N.Y. May 9, 2016) ("The Second Circuit's decision in [*Cheeks*] . . . rests entirely on 'exceptional' language in Rule 41(a); there simply is no commensurate language in Rule 68."). Indeed, the non-discretionary language of Rule 68—"[t]he clerk must then enter judgment"—suggests that entry of final judgment "is a ministerial act that does not require the action of the judge." *Harris v. City of New York*, No. 03 Civ. 8767(RWS), 2004 WL 1555194, at *1 (S.D.N.Y. July 12, 2004).

Plaintiff's argument is supported by the finding by some of my colleagues that there does not appear to be a basis for reading an exception into the mandatory language of Rule 68 in the FLSA context. *See Khereed v. W. 12th St. Rest.*, 317 F.R.D. 441, 442-43 (S.D.N.Y. 2016) ("The policy considerations that prompted the Second Circuit to impose the requirement of judicial approval under Rule 41 in wage-and-hour cases cannot be engrafted onto Rule 68, absent legislative action."); *Pest v. Express Contracting Corp. of Great Neck*, No. 16 CV 3785 (DRH), 2016 WL 6518577, at *1 (E.D.N.Y. Nov. 3, 2016) (concluding that "*Cheeks* does not compel judicial approval" of a Rule 68 FLSA settlement); *Baba*, 2016 WL 2903597, at *1 ("I can see no basis for reading any exception into the absolutely mandatory language of Rule 68, which compels the Clerk of Court to enter judgment on an accepted Offer of Judgment."); *Barnhill v. Fred Stark Estate*, No. 15 Civ. 3360 (BMC), 2015 WL 5680145, at *1 (E.D.N.Y. Sept. 24, 2015) ("Unlike Rule 41, as construed in *Cheeks*, Rule 68 has no 'hook,' no limiter, that restricts its use and that would permit excluding the FLSA from its reach. To hold that Rule 68 is not available in FLSA cases without court approval would be to rewrite it."); *see also Anwar v. Stephens*, No. 15-CV-4493(JS)(GRB), 2017 WL 455416, at *1 (E.D.N.Y. Feb. 2, 2017). However, the pretense of using Rule 68 to defeat the entire purpose of *Cheeks* has not escaped them. In *Baba*, Chief Judge McMahon stated that "Rule 68 Offer of Judgment procedures gives clever

8

defendant-employers an aperture the size of the Grand Canyon through which they can drive coercive settlements in Fair Labor Standards Acts cases without obtaining court approval—as well as a vehicle for seriously compromising the plaintiff's lawyer-client relationship." 2016 WL 2903597, at *1.

In a recent decision addressing the issue, Judge Forrest rejected a Rule 68 offer and acceptance of judgment in a FLSA case where it was evident that the parties had engaged in settlement negotiations prior to submitting the offer and acceptance, in an apparent attempt to evade *Cheeks* review. *Rodriguez-Hernandez v. K Bread & Co.*, 15-cv-6848, slip op. (S.D.N.Y. Jan 10, 2017). There, because the parties had engaged in settlement negotiations and arrived at an agreement prior to submitting the purported "offer," Judge Forrest determined that it was not an "offer" within the meaning of Rule 68, and instead more properly characterized as a negotiated settlement under Rule 41 subject to *Cheeks* review. *Id.* at 7-10. I share Judge Forrest's concern about the practice, but find that further discussion concerning two aspects of the decision is warranted. First, negotiation prior to a Rule 68 offer is not necessarily prohibited under the Rule. Though uncommon, it is not unheard of. *See, e.g.*, *John v. Demaio*, No. 15-CV-6094 (NGG), 2016 WL 7410656, at *1, 4 (E.D.N.Y. Dec. 22, 2016) (noting that the parties had engaged in settlement negotiations prior to Rule 68 offer); *Langer v. 1600 E Downtown Prop., LLC*, No. 2:14-cv-09274-CAS(MRWx), 2015 WL 3649085, at *4 (C.D. Cal. June 9, 2015) (remarking that plaintiff's counsel unnecessarily prolonged the litigation by failing to negotiate between the first and second Rule 68 offers); *see also Robins v. Scholastic Book Fairs, Inc.*, Nos. 96-35431, 96-35624, 96-35638, 1997 WL 335005, at *2 (9th Cir. June 12, 1997) (noting that the parties had "negotiate[d] the Rule 68 offer of judgment" "during [a] settlement conference"). Indeed, such negotiations make sense since they permit the parties to understand the settlement

price points for their adversary. Second, requiring that all Rule 68 "offers"—including, apparently, those outside the FLSA context—not be agreed upon in advance would force the courts into fact-finding about the nature of negotiations, and ultimately undermine the spirit of Rule 68. *See Steiner*, 816 F.3d at 31 ("Rule 68 is a cost-shifting rule intended to encourage settlement and avoid protracted litigation." (citing *Marek*, 473 U.S. at 5).

The Department of Labor recently filed an amicus brief at Judge Caproni's invitation in *Sanchez v. Burgers & Cupcakes LLC*, 16-cv-3862 (S.D.N.Y.), which takes the position that a plaintiff may not settle her FLSA claims by accepting a Rule 68 offer that has not been approved by a court or the DOL. I agree with the Department of Labor that, despite the seemingly mandatory language of the Rule, plaintiffs may not accept offers of judgment on their FLSA claims absent judicial or DOL approval. First, *Cheeks*' discussion of the necessity of judicial review to promote FLSA's statutory purpose in light of the potential for abuse in FLSA settlements is applicable outside the Rule 41 context. *See Cheeks*, 796 F.3d at 206. Indeed, there is likely even greater potential for abuse when it comes to settlements made within the Rule 68 framework. Because plaintiffs face severe consequences if they refuse a Rule 68 offer, employers are granted even more leverage to strike abusive deals. *See Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 692 (7th Cir. 2013) ("Plaintiffs who receive Rule 68 offers . . . are at their peril whether they accept or reject a Rule 68 offer."); *Utility Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1244 (11th Cir. 2002) ("[A] Rule 68 offeree is at the mercy of the offeror's choice of language and willingness to conform it to the understanding of both parties."); *Webb v. James*, 147 F.3d 617, 621 (7th Cir. 1998) ("The Rule is . . . designed to put significant pressure on the plaintiff to think hard about the likely value of its claim as compared to the defendant's offer."). The potential sources of abuse highlighted in

*Cheeks*—highly restrictive confidentiality provisions, overbroad releases, improperly high attorney's fees—are all present in the Rule 68 context as well. Indeed, one of the cases cited in *Cheeks* as an example of abusive settlement offers, *Walker v. Vital Recovery*, involved Rule 68 offers. 300 F.R.D. 599, 600 (N.D. Ga. 2014). In that case, the defendant had made offers of judgment of $100 to twenty-two unemployed plaintiffs, and the district court held that judicial review of the Rule 68 offer was required "[d]espite the apparent conflict between automatic entry of judgment of an accepted Rule 68 offer and the requirement . . . of judicial approval of FLSA settlements." *Id.* at 602.

Second, though unequivocal on its face, there are exceptions to Rule 68's mandatory entry of judgment in situations where court review is necessary to assess the fairness of a Rule 68 offer and acceptance. Most notably, "in the context of class actions, Rule 68 offers of judgment . . . must subsequently be approved by the court after a fairness hearing." *Gordon v. Gouline*, 81 F.3d 235, 239-40 (D.C. Cir. 1996) (citing cases); *see also Carroll v. United Compucred Collections, Inc.*, No. 1:99-0152, 2003 WL 1903266, at *7 (M.D. Tenn. Mar. 31, 2003) ("The Court must determine . . . whether it was proper for the Clerk to enter a judgment pursuant to Rule 68, and if so, whether such entry has complied with the requirements of Rule 23."); *Carducci v. Aetna U.S. Healthcare*, No. CIV.A. 01-4675(JBS), 2003 WL 22207204, at *5 (D.N.J. Apr. 16, 2003) ("[W]hen an offer of judgment is made in a class action, the court must hold a Rule 23(e) fairness hearing to approve the judgment before judgment is entered according to the offer."); Wright & Miller § 3005 ("In general, it is said that the court has no choice about entering the agreed judgment. But this general statement is too broad to encompass all instances in which Rule 68 offers are made. . . . [I]n class actions the court has an independent duty under rule 23(e) to decide whether a settlement is acceptable, and Rule 68 cannot remove that authority

and duty."). Judicial review of Rule 68 offers also appears in the bankruptcy context. *See Gordon*, 81 F.3d at 239 (holding that the only "sensible way to accommodate the congressional purpose of making Rule 68 applicable in bankruptcy proceedings is simply to require a clear and unconditional acceptance by the trustee within ten days of the offer of judgment" and then allow time for "the Bankruptcy Court to approve the settlement."); Wright & Miller § 3005 ("[W]hen a bankruptcy trustee accepts a Rule 68 offer, that acceptance is effective under the rule even though the trustee has to obtain the bankruptcy court's approval of the compromise, and that approval is not obtained within the time to accept the offer."). And when accepted offers of judgment include illegality, judgment will not be entered. *See Perkins v. U.S. W. Comms.*, 138 F.3d 336, 338 n.5 (8th Cir. 1998) ("The district court will not, of course, enter judgment pursuant to a Rule 68 offer of judgment that contemplates illegal activity, regardless of the parties' agreement."). Finally, district courts retain their equitable discretion in deciding whether to order injunctive relief, even when such relief is included in the accepted Rule 68 offer. *See* Wright & Miller § 3005 ("[T]he court must retain authority to evaluate a proposed judgment for injunctive relief. . . . The decision whether to enter any injunction is ultimately within the court's discretion."). I see no reason to treat cases brought under the FLSA any differently than class actions and bankruptcy cases where a Rule 68 offer and acceptance is subject to court approval.

      The path the parties appear to have taken in this case to the filing of the Rule 68 Offer of Judgment raises troubling issues. This case was litigated through discovery and summary judgment, and a trial date was scheduled for July 20, 2016. (Doc. 106.) Prior to the trial date, in the cover letter that accompanied the pretrial documents, defense counsel indicated that, among other things, "parties came close to reaching an agreement in principle with respect to settlement, but were unable to finalize a deal." (Doc. 120.) Subsequently, I adjourned the trial date on the

basis of the parties' representation that they had entered into a settlement, (Doc. 123), not an offer of judgment that had been accepted.  Neither party objected or sought to correct me when I directed them to make a submission by August 7, 2016 so that I could determine if their settlement, including attorney's fees, was fair and reasonable.  (Doc. 124.)  It was only after the parties failed to make a submission on August 7 and my issuance of an Order directing that such filing be made by August 11, (Doc. 125), that Defendants filed an Offer of Judgement on August 10, (Doc. 126), and Plaintiff accepted that offer the following day, (Doc. 128).

Nothing about the parties' actions suggest that they were invoking Rule 68 for its intended purpose of "encourag[ing] settlement and avoid[ing] litigation."  *Marek*, 473 U.S. at 5.  The case had been pending for approximately three years, discovery had long been completed, and the scheduled trial date was fourteen days away when the parties informed me that they had "reached terms of settlement."  It was only weeks after informing me that they had reached a settlement—after I directed them to provide the terms of the settlement for judicial review—that the Rule 68 offer was purportedly rendered.  Therefore, according to their own submissions, the Rule 68 offer and acceptance occurred after they had already "reached terms of settlement," so the purpose of Rule 68 was barely implicated, if at all.  What has transpired before me is clearly beyond the purpose of Rule 68 and appears to be inconsistent with the purpose of the FLSA as recognized by the Second Circuit "to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work."  *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips*, 324 U.S. at 493).  Taking the parties at their word that they had "reached terms of settlement," (Doc. 123), the subsequent filing of the Offer of Judgment and Acceptance appears to be an end run around judicial review of the terms of that settlement, and any provision for attorney's fees.  It also appears that the adjournment may have been requested

13

to get around the time limitations built into Rule 68.  *See* Fed. R. Civ. P. 68 (an offer of judgment must be made "[a]t least 14 days before the date set for trial.").  I find this lack of transparency to be troubling as a general matter and even more so in the context of a FLSA case.  Therefore, in light of the parties' apparent efforts to purposefully evade my review of their settlement, it suggests to me that the settlement may be of precisely the type of settlement the court in *Cheeks* acknowledged should be subject to judicial approval.  *See Cheeks*, 796 F.3d at 206 ("Examining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary.").

## IV.  Conclusion

Accordingly, it is hereby ORDERED that the parties comply with my previous order directing them to submit the proposed settlement agreement for approval no later than April 15, 2017.

SO ORDERED.

Dated: March 16, 2017
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge